UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

JAMIRR TERRY,

                Plaintiff,                Case No. 1:12-cv-347

v.                                          Honorable Paul L. Maloney

CALHOUN COUNTY CORRECTIONAL
FACILITY et al.,

                Defendants.
_____/

## **OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e©. The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against all of the named and unnamed Defendants, except Defendants Byam and Vergin. The Court will serve Defendant Byam with Plaintiff's First Amendment claim regarding the inability to access to state and local newspapers and newspaper reporters, and Defendant Vergin will be served with Plaintiff's First Amendment claims regarding the improper handling of his legal mail and retaliation.

**Factual Allegations**

Plaintiff is incarcerated at the Charles Egeler Reception and Guidance Center, but the events giving rise to Plaintiff's complaint occurred while he was incarcerated at the Calhoun County Correctional Facility (CCCF). In his *pro se* complaint, Plaintiff sues CCCF and the following county employees: Calhoun County Sheriff Allen L. Byam; Doctor (Unknown) Mintack; Sergeant (Unknown) Watson; Second Shift D-Pod Deputy Sally Jenkins; First Shift D-Pod Deputy Roody Vergin; Deputy Steve Frierson; Sherri Mason; Chief Deputy Marshall Weeks; Captain Lee R. Zick; Compliance Officer Niechelle Hunt; Dentist (unknown) Julie; and Vicki Litima. Plaintiff also names numerous unknown parties, including Unknown Party #1 (Commissary Deputy), Unknown Party #2 (Accountant), Unknown Party #3 (Mailroom Deputy), Unknown Party #4 (AM 1st Shift Lt.), Unknown Party #5 (PM 2d shift Lt.).

Plaintiff raises numerous claims regarding the conditions of his confinement at CCCF. Additional facts will be provided below as necessary to resolve Plaintiff's claims. He seeks injunctive relief, as well as monetary damages.

**Discussion**

I.   Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough

facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(I)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

As an initial matter, the Calhoun County Correctional Facility is neither a "person" nor an entity capable of being sued under § 1983. However, construing Plaintiff's *pro se* complaint with all required liberality, *Haines*, 404 U.S. at 520, the Court assumes that Plaintiff intended to sue Calhoun County. Calhoun County may not be held vicariously liable for the actions of its employees under § 1983. *See Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011); *City of Canton*

*v. Harris*, 489 U.S. 378, 392 (1989); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Instead, a county is liable only when its official policy or custom causes the injury. *Id.* In a municipal liability claim, the finding of a policy or custom is the initial determination to be made. *Doe v. Claiborne County*, 103 F.3d 495, 509 (6th Cir. 1996). The policy or custom must be the moving force behind the constitutional injury, and a plaintiff must identify the policy, connect the policy to the governmental entity and show that the particular injury was incurred because of the execution of that policy. *Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005); *Alkire v. Irving,* 330 F.3d 802, 815 (6th Cir. 2003); *Doe*, 103 F.3d at 508-509. It is the court's task to identify the officials or governmental bodies which speak with final policymaking authority for the local government in a particular area or on a particular issue. *McMillian v. Monroe County*, 520 U.S. 781, 784-85 (1997). In matters pertaining to the conditions of the jail and to the operation of the deputies, the sheriff is the policymaker for the county. MICH. COMP. LAWS § 51.75 (sheriff has the "charge and custody" of the jails in his county); MICH. COMP. LAWS § 51.281 (sheriff prescribes rules and regulations for conduct of prisoners); MICH. COMP. LAWS § 51.70 (sheriff may appoint deputies and revoke appointments at any time); *Kroes v. Smith*, 540 F. Supp. 1295, 1298 (E.D. Mich. 1982) (the sheriff of "a given county is the only official with direct control over the duties, responsibilities, and methods of operation of deputy sheriffs" and thus, the sheriff "establishes the policies and customs described in *Monell*"). Thus, the Court will look to the allegations in Plaintiff's complaint to determine whether Plaintiff has alleged that Sheriff Byam has established a policy or custom which caused Plaintiff to be deprived of a constitutional right.

### A. **Telephone charges**

Plaintiff claims that he was charged excessive fees to make telephone calls from the jail. Plaintiff alleges that the jail, which has a phone contract with Evercom, charges a $4.00 to

- 4 -

$5.00 connection fee per call plus $.70 to $1.00 per minute. Plaintiff maintains that prisoners incarcerated at facilities operated by the Michigan Department of Corrections (MDOC), which also has a contract with Evercom, pay only $.18 per minute for phone calls and are not charged a connection fee. Plaintiff alleges that issues with the phones at CCCF were referred to Defendants Frierson, Mason and Watson.

Construing the complaint generously, *see Haines*, 404 U.S. at 520, the Court will assume that Plaintiff intends to raise a First Amendment challenge. Federal courts, including this Court, have consistently rejected First Amendment claims challenging high telephone rates on grounds that prisoners are not entitled to a specific rate for telephone calls and that prisoners failed to allege that the rates were so exorbitant as to deprive them of telephone access altogether. *See, e.g.*, *Johnson v. California*, 207 F.3d 650, 656 (9th Cir. 2000) ("There is no authority for the proposition that prisoners are entitled to a specific rate for their telephone calls and the complaint alleges no facts from which one could conclude that the rate charged is so exorbitant as to deprive prisoners of phone access altogether."); *Semler v. Ludeman*, No. 09–0732, 2010 WL 145275, at *15 (D. Minn. Jan. 8, 2010) (dismissing a claim that telephone rates were expensive because involuntarily committed sex offenders "do not have a First Amendment right to a specific rate for their telephone calls," and the plaintiffs "made no allegation that they are precluded from making telephone calls given the rate charged"); *Jayne v. Bosenko*, No. 2:08–cv–02767–MSB, 2009 WL 4281995, at *9-10 (E.D. Cal. Nov. 23, 2009) (same); *Beaulieu v. Ludeman*, No. 07–CV–1535, 2008 WL 2498241, at *19 (D. Minn. June 18, 2008) (same); *Bowcut v. Idaho State Bd. of Corr.*, No. CV06–208–S–BLW, 2008 WL 2445279, at *4 (D. Idaho June 16, 2008) (same); *Thomas v. King*, No. CV F 06 0649, 2008 WL 802475, at *3 (E.D. Cal. Mar. 24, 2008) (same); *Dotson v. Calhoun Cnty. Sheriff's Dep't*, No. 1:07–CV–1037, 2008 WL 160622, at *3 (W.D. Mich. Jan. 15, 2008);

*Boyer v. Taylor*, No. 06–694–GMS, 2007 WL 2049905, at *9 (D. Del. Jul. 16, 2007); *Riley v. Doyle*, No. 06–C–574–C, 2006 WL 2947453, at *4 (W.D. Wis. Oct. 16, 2006) ("[T]elephone rates charged to institutionalized persons do not implicate the First Amendment no matter how exorbitant they may be.").

Plaintiff does not allege that he was unable to make telephone calls or otherwise communicate with friends and family as a result of the high telephone rates. Furthermore, while Plaintiff alleges that issues with the phones were referred to Defendants Frierson, Mason and Watson, he does not allege that those Defendants had any control whatsoever over the amount that inmates were charged for telephone calls. Because Plaintiff does not allege that Defendants Frierson, Mason and Watson actively engaged in unconstitutional conduct, he fails to state a claim against them. *See Iqbal*, 556 U.S. at 676 ( "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *see also Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). Plaintiff, therefore, fails to state a First Amendment claim based upon the telephone fees charged at CCCF.

      B.  **Commissary prices**

Plaintiff also alleges that prices in the jail commissary were excessive and nearly double the cost paid by prisoners incarcerated by the MDOC. Courts consistently have held that prisoners have no constitutional right to purchase products at the same price as charged in retail stores. *See, e.g., Griffin v. Doe*, No. 1:10CV1987, 2011 WL 94563, at *1 (N.D. Ohio Jan.11, 2011); *Simpson v. Caruso*, No. 1:09–cv–245, 2009 WL 1010973, at * 3 (W.D. Mich. Apr. 14, 2009); *Floyd v. Emmet County Correctional Facility*, No. 1:06–CV–283, 2006 WL 1429536, at * 4 (W.D. Mich. May 23, 2006) (prisoners have no constitutionally guaranteed right to purchase commissary items

at the same or lower price than charged at regular retail stores); *McCall v. Keefe Supply Co.*, 71 F. App'x 779, 780 (10th Cir. 2003) (allegation that prisoner was overcharged for goods at prison commissary failed to state a constitutional claim); *French v. Butterworth*, 614 F.2d 23, 25 (1st Cir. 1980) (no legal basis exists for a demand that inmates be offered items for purchase at or near cost). Likewise, inmates at a county jail have no constitutional right to purchase products at the same price as charged at a commissary operated by the MDOC. Plaintiff, therefore, fails to state a due process claim against arising from the cost of goods in the jail commissary.

### C. **Transaction fee for deposits**

Plaintiff complains that while other county jails and the MDOC allow prisoners to receive money orders through the mail, CCCF only allows prisoners to receive money through "Calhoun County Secure Deposit," which requires a transaction fee of $3.50. Plaintiff's allegation implicates the Fourteenth Amendment Due Process Clause. However, "user fees," such as the one at issue here, have been determined to be nominal surcharges and non-punitive, and therefore, they do not violate due process. *See Brown v. Thomas*, Nos. 09-2610, 09-4478, 1020 WL 715394, at *7 (D.N.J. 2010); *see also Vance v. Barrett*, 345 F.3d 1083, 1089 (9th Cir. 2003) (holding that prison officials could deduct "applicable charges" to pay for expenses incurred in creating and maintaining prison trust accounts); *Abney v. Alameida*, 334 F. Supp. 2d 1221, 1228 (S.D. Cal. 2004) (holding that a two percent administrative fee taken from deposits made to prisoners' trust accounts to make restitution payments constituted a reasonable user fee). Plaintiff, therefore, fails to state a claim arising from the $3.50 transaction fee.

### D. **Fees for hygiene supplies, undergarments and healthcare**

Plaintiff claims that "Foreign Detainees (I.C.E.)" held at the jail were provided with free basic hygiene supplies, including soap, toothpaste, toothbrush, and comb, while indigent

"Moorish American Citizens/American Citizens" were required to purchase them. According to Plaintiff, the MDOC also provided basic hygiene supplies to indigent prisoners for free. Plaintiff further claims that foreign detainees at CCCF received free t-shirts, socks and underwear, while "Moorish American Citizens/American Citizens" were required to pay for those items. Defendant Hunt stated that her superiors would not allow her to pass out free undergarments to local inmates. In addition, Plaintiff claims that foreign detainees received free healthcare at the jail, while American citizens were charged $6.00 to see a nurse and $20.00 to see a doctor or dentist.

"The Equal Protection Clause prohibits discrimination by government which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference." *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681–82 (6th Cir. 2011). The "foreign detainees" referenced by Plaintiff are federal immigration detainees housed at the Calhoun County Jail on a contractual basis. The terms of their confinement is dictated and paid for by the federal government, whereas the expenses of the inmates held in the jail for violating Michigan law are paid by the state. The kind of discrimination alleged by Plaintiff is not cognizable under the Equal Protection Clause, because it results from the action of two separate sovereigns. *See Jackson Water Works v. Public Utilities Comm'n*, 793 F.2d 1090, 1095 n.2 (9th Cir. 1986) ("[T]he equal protection clause does not apply when the dissimilar treatment involved is the result of differences between the laws not of one state, but of different sovereignties."); *see also Oses v. United States*, 833 F. Supp. 49, 53 (D. Mass. 1993) (holding that federal government and states are separate sovereigns and that federal government need not treat time served under federal sentence as equivalent of time served under preceding state sentence). The federal government and states are separate sovereigns and the state government need

not provide the same amenities to prisoners as provided by the federal government. Plaintiff does not allege that he was treated differently from other similarly situated state prisoners held at the jail. Accordingly, he fails to state an equal protection claim.

Plaintiff's allegations also implicate his Eighth Amendment right against cruel and unusual punishment. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Plaintiff does not allege that he was denied basic hygiene supplies, clothing or necessary medical care at CCCF. Therefore, he fails to state an Eighth Amendment claim.

### E.    **Access to law library and legal writing supplies**

Plaintiff alleges that foreign detainees had full access to the CCCF law library, while Moorish American citizens and all other American citizens were denied access to the law library and were not given copy privileges or carbon paper. Consequently, Plaintiff had to hand write the complaint filed in this action. As discussed in the previous section, the privileges of federal immigration detainees are defined by the federal government, while the privileges of prisoners held

for violations of state law are defined by the state. Because the difference in treatment alleged by Plaintiff resulted from the action of separate sovereigns, he fails to state an equal protection claim.

To the extent Plaintiff asserts a violation of his right of access to the courts, he fails to state a claim upon which relief may be granted. It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824-25. An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop v. Johnson*, 977 F.2d 996, 1000 (6th Cir. 1992); *Ryder v. Ochten*, No. 96-2043, 1997 WL 720482, at *1-2 (6th Cir. Nov. 12, 1997). In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351-53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). As Plaintiff successfully filed the instant civil rights action, he cannot show that he suffered actual injury resulting from the alleged deprivations. Accordingly, he fails to state a First Amendment claim.

### F. **Access to newspapers and newspaper reporters**

Plaintiff claims that all prisoners at CCCF were denied access to local or state newspapers as well as the ability to communicate with local and state newspapers. At this stage of the proceedings, Plaintiff has sufficiently alleged that the sheriff had a policy or custom of preventing inmates from accessing newspapers or communicating with newspaper reporters. Accordingly, Plaintiff's First Amendment claim will be served against Defendant Byam.

### G. **Conditions in housing unit**

Plaintiff alleges that the shift deputies in D-Pod kept the temperature very low. Excessively low cell temperatures may state an Eighth Amendment claim under certain circumstances. *See Wilson v. Seiter*, 501 U.S. 294, 304 (1991) (noting that "a low cell temperature at night combined with a failure to issue blankets" may establish an Eighth Amendment violation); *Spencer v. Bouchard*, 449 F.3d 721, 728 (6th Cir. 2006) (pretrial detainee's confinement to cold cell continuously for several months, coupled with leaking ceiling in cell, constituted sufficiently serious deprivation to support detainee's inadequate-shelter claim against county officials). The circumstances, nature, and duration of the alleged deprivation must be considered in determining whether a constitutional violation has occurred." *Spencer*, 449 F.3d at 728 (citing *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000)). Plaintiff's vague assertion that the temperature was "very low," with no additional supporting facts, does not permit the court to infer more than the mere possibility of misconduct. *See Iqbal*, 556 U.S. at 679. Plaintiff also fails to allege that he suffered any physical injury as a result of the alleged low temperatures. The Sixth Circuit repeatedly has held that Eighth Amendment claims for monetary relief based on mental or emotional injury are precluded by § 1997e(e) absent a showing of physical injury. *See, e.g.*, *Richmond v. Settles*, 450 F. App'x 448,

453 (6th Cir. 2011); *Jackson v. Herrington*, 493 F. App'x 348, 354 (6th Cir. 2010); *Flanory v. Bonn*, 604 F.3d 249, 254 (6th Cir. 2010); *Merchant v. Hawk-Sawyer*, No. 01-6244, 2002 WL 927026, at *2 (6th Cir. May 7, 2002). Consequently, Plaintiff fails to state a claim regarding the cell temperature at CCCF.

Plaintiff also contends that the deputies made up their own "Guantanamoian/Draconian" rules for prisoners and punished violators with "lock down" without affording them notice or a hearing. For example, Plaintiff claims that prisoners were punished with lock down for talking above a whisper or making noise, having a dust bunny on their cell floor, having trash in their garbage can or putting liquids in the microwave. While Plaintiff generally complains about prisoners being indiscriminately punished with top lock for minor offenses, he does not allege any specific instance where he was placed on lock down, let alone any unnecessary and wanton infliction of pain associated with his placement on lock down. *See Whitley v. Albers*, 475 U.S. 312, 320-22 (1986). Furthermore, federal courts in the Sixth Circuit repeatedly have held that brief periods of lock down or "top lock" do not violate a prisoner's Eighth Amendment right against cruel and unusual punishment. *See Metcalf v. Veita*, No. 97-1691, 1998 WL 476254, at *2 (6th Cir. Aug. 3, 1998) (confinement on top lock for eight days did not violate the Eighth Amendment); *Drobil v. Brown*, No. 91-1039, 1991 WL 86295 (6th Cir. May 24, 1991) (confinement in top lock for three days before being transferred to another facility did not constitute cruel and unusual punishment in violation of the Eighth Amendment); *Green v. Inge*, No. 10–12804, 2010 WL 3169847, at *3 (E.D. Mich. Aug.11, 2010) (holding that seven days toplock did not result in the denial of "the minimal civilized measure of life's necessities"). Plaintiff, therefore, fails to state a an Eighth Amendment claim arising from placement on lock down.

Even if Plaintiff was placed on top lock, he fails to state a due process claim. The Supreme Court has held that a prisoner does not have a protected liberty interest in the procedures affecting his classification and security because the resulting restraint does not impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). In *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91(6th Cir. 1995), the Sixth Circuit applied the *Sandin* test to the claim of a Michigan inmate that the mandatory language of the MDOC's regulations created a liberty interest that he receive notice and hearing before being placed in administrative segregation. The court held that regardless of the mandatory language of the prison regulations, the inmate did not have a liberty interest because his placement in administrative segregation did not constitute an atypical and significant hardship within the context of his prison life. *Id; see also Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997). Likewise, the Sixth Circuit consistently has held that placement on top lock for a period of days does not constitute an atypical and significant hardship, and, thus, does not implicate the Due Process Clause. *See Baker v. Wells*, No. 99-1673, 2000 WL 924554, at *1 (6th Cir. June 28, 2000); *Green v. Hill*, No. 94-1851, 1995 WL 764119, at *4 (6th Cir. Dec. 27, 1995).

Plaintiff further alleges that the shift sergeants and lieutenants "turn[ed] a blind eye and a deaf ear" to prisoner complaints and allowed their subordinates to engage in unconstitutional behavior. In addition, Plaintiff asserts that Sheriff Byam, Chief Deputy Weeks and Captain Zick failed to take corrective action with regard to their subordinates. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 566 U.S. at 676; *Monell*, 436 U.S. at 691; *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active

unconstitutional behavior. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899. The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 566 U.S. at 676. Plaintiff has failed to allege that the sergeants and lieutenants or Defendants Byam, Weeks and Zick engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them.

### H. **Handling of legal mail**

Plaintiff claims that Defendant Vergin failed to properly handle his legal mail on four occasions. Plaintiff further claims that after Plaintiff made complaints against Vergin, Vergin retaliated by making a false statement to "inmate/Aryan Killinberg" that Plaintiff made a complaint against Killinberg. At this stage of the proceedings, the Court finds that Plaintiff's allegations are sufficient to warrant service of the complaint against Defendant Vergin.

### **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that all of the named and unnamed Defendants, except for Defendants Byam and Vergin, will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2), 1915A(b), and 42 U.S.C. § 1997e©.

The Court will serve Defendant Byam with Plaintiff's First Amendment claim regarding the inability to access to state and local newspapers and newspaper reporters, and Defendant Vergin will be served only with regard to Plaintiff's First Amendment claims regarding the improper handling of his legal mail and retaliation.

An Order consistent with this Opinion will be entered.


Dated:   October 19, 2012              /s/ Paul L. Maloney
                                       Paul L. Maloney
                                       Chief United States District Judge